SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District | Middle District of Florida, Tampa Division |
|---|---|---|
| Name (under which you were convicted): STEPHANIE DASINGER | | Docket or Case No.: 8:14-cr-00062 |
| Place of Confinement: TALLAHASSEE FCI | Prisoner No.: 60399-018 | |
| UNITED STATES OF AMERICA V. | Movant (include name under which convicted) STEPHANIE DASINGER | |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging: _____
   United States District Court, Middle District of Florida, Tampa Division
   801 North Florida Avenue
   Tampa, Florida 33602
   (b) Criminal docket or case number (if you know): 8:14-cr-00062

2. (a) Date of the judgment of conviction (if you know): February 12, 2015
   (b) Date of sentencing: February 3, 2015

3. Length of sentence: LIFE imprisonment as to Counts 1 & 2; 60 months imprisonment as to Count 3 (consecutive to Counts 1 & 2) – all followed by term of supervised release

4. Nature of crime (all counts): _____
   Count One: Conspiracy to Possess with Intent to Distribute Methamphetamine
   Count Two: Possession with Intent to Distribute Methamphetamine
   Count Three: Felon in Possession of a Firearm

5. (a) What was your plea? (Check one)
   (1) Not guilty ☒   (2) Guilty ☐   (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)   Jury ☒   Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☒   No ☐

8. Did you appeal from the judgment of conviction?   Yes ☒   No ☐

9. If you did appeal, answer the following:
   (a) Name of court: Eleventh Circuit Court of Appeal
   (b) Docket or case number (if you know): 15-11533
   (c) Result: Affirmed per curiam.
   (d) Date of result (if you know): Opinion issued on May 24, 2016; Mandate issued on June 22, 2016.
   (e) Citation to the case (if you know): *United States v. Dasinger*, 650 Fed. Appx. 664 (11th Cir. 2016)
   (f) Grounds raised: 1) The district court erred in denying the Petitioner's motion to suppress evidence found as a result of an illegal stop, detention and seizure; (2) the district court abused its discretion when it denied the Petitioner's motion for rehearing after newly discovered evidence was found in relation to the Petitioner's motion to suppress; (3) the district court erred by failing to grant the Petitioner's motion for judgment of acquittal; (4) the verdicts rendered by the jury are truly inconsistent; and (5) the sentence imposed upon the Petitioner was unconstitutional and not substantively reasonable.

   (g) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☒
      If "Yes," answer the following:
      (1) Docket or case number (if you know): _____
      (2) Result: _____

      (3) Date of result (if you know): _____
      (4) Citation to the case (if you know): _____
      (5) Grounds raised: _____

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

    Yes ☐   No ☒

11. If your answer to Question 10 was "Yes," give the following information:
    (a) (1) Name of court: _____
        (2) Docket or case number (if you know): _____
        (3) Date of filing (if you know): _____
        (4) Nature of the proceeding: _____
        (5) Grounds raised: _____

_____
_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?
   Yes ☐   No ☐
(7) Result: _____
(8) Date of result (if you know): _____

( If you filed any second motion, petition, or application, give the same information:
(1) Name of court: _____
(2) Docket of case number (if you know): _____
(3) Date of filing (if you know): _____
(4) Nature of the proceeding: _____
(5) Grounds raised: _____
_____
_____
_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?
   Yes ☐   No ☐
(7) Result: _____
(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application
   (1) First petition:    Yes ☐   No ☐
   (2) Second petition:   Yes ☐   No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:
Appeal was not appropriate or allowable under the law regarding the type of motion filed by the Petitioner.
_____
_____

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:** Trial counsel rendered ineffective assistance of counsel when he failed to properly advise the Petitioner about a plea offer from the government that would have resulted in a substantially lower sentence.

(a Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Prior to proceeding to trial, the government offered the Petitioner a plea offer of ten (10) years if she was willing to testify against her co-defendant. At the time that this plea offer was offered, the government had not filed notice of the enhancement under Section 851 and the Petitioner had not pursued a motion to suppress. Trial counsel brought the offer to the Petitioner and discussed how accepting the plea would affect the motion to suppress. Specifically, if the Petitioner took the plea, she would not be able to file the motion to suppress and trial counsel felt they had a good chance of success on the motion. The Petitioner was not made aware, by trial counsel, that if she rejected the plea offer she would ultimately be facing a mandatory life sentence if convicted at trial. As a result of trial counsel's advice, and lack of advice, the first offer was declined. After the motion to suppress was filed and litigated, the government offered the Petitioner a second offer, which was a plea to Count One with a 20-year minimum mandatory up to a maximum term of life imprisonment sentence range. Prior to the start of trial, Mr. Lopez advised the Court about the offers and the timeline he received them and presented them to the Petitioner Mr. Lopez did not offer any testimony as to why the original offer was rejected by the Petitioner, but he went into detail about the second offer. Specifically, when he learned of the offer, he went to the county jail and visited with the Petitioner. He alleged that he explained to her what was happening, that she could enter the plea, and she would get a sentence of at least 20 years. The Petitioner allegedly told Mr. Lopez that she wasn't sure and that she was going to think about it and get back to him. However, the following morning, the Petitioner was brought to the courthouse so a meeting on the plea could be had. Mr. Lopez did not bring a copy of the proposed plea agreement at that time. The Petitioner was given a copy of the proposed plea agreement prior to trial and she ultimately rejected it. However, she testified that she felt Mr. Lopez was trying to bully her into accepting the plea without going over any of the details with her. The Petitioner also believed, based on Mr. Lopez's advice, that they would win the issue regarding the motion to suppress on appeal and accepting the plea would not allow her the opportunity to appeal that issue (because almost all plea offers from the government include a waiver of appeal clause).

**Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

    Yes ☐    No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

Claim of ineffective assistance of counsel is more appropriately raised in a collateral proceeding. *See, Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

(c **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

    Yes ☐    No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _

Docket or case number (if you know): _

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _

___

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

    Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _

___

Docket or case number (if you know): _

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _

___

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

___

___

___

___

**GROUND TWO:** Trial counsel rendered ineffective assistance of counsel when he failed to investigate and secure the attendance of the most important witness at the Petitioner's motion to suppress hearing and again prior to trial.

    (a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
    See following page

On July 15, 2014, the Appellant filed a Motion to Suppress Evidence as a Result of an Illegal Stop, Detention and Seizure. (Doc. 37). On August 21, 2014, a hearing was held on the Appellant's Motion to Suppress. (Doc. 50). On September 4, 2014, the district court denied the Appellant's Motion to Suppress. (Doc. 59). On August 21, 2014, an evidentiary hearing was held on the Appellant's Motion to Suppress Evidence. During said hearing, the United States called several witnesses. Florida Highway Patrol Trooper Bobby Hartzig was the first witness called to testify for the United States. (Doc. 120 at 13). Trooper Hartzig testified that on October 8, 2013, he responded to a Days Inn Hotel in Brooksville, Florida, in order to back up another trooper that was there on a traffic stop. (Doc. 120 at 14). Trooper Hartzig's involvement lead him to encounter an individual named James Lloyd who was ultimately arrested at the scene due to narcotics found inside his vehicle. Mr. Lloyd revealed that he rented one room at the hotel and he gave Trooper Hartzig consent to search that room. (Doc. 120 at 15). Soon thereafter, it was revealed that Mr. Lloyd had actually rented a second room. Specifically, during the search of the first room, Trooper Hartzig was notified by hotel staff and management that Mr. Lloyd had actually rented a second room as well. Thereafter, Mr. Lloyd was confronted with this information and he could not remember whether he had rented the room or not. However, Mr. Lloyd was shown paperwork from management that showed his signature for the additional room. (Doc. 120 at 16). Trooper Hartzig testified that Mr. Lloyd was still not one hundred percent sure of whether or not he rented the room. (Doc. 120 at 16). Trooper Hartzig testified that Mr. Lloyd ultimately gave them consent to search this second room. (Doc. 120 at 17). Thereafter, Trooper Hartzig and Trooper Rios went to the second room and came into contact with the Appellant and Mr. Patterson. (Doc. 120 at 17). Trooper Hartzig testified that he knocked on the door along with hotel staff and the Appellant answered the door. Trooper Hartzig explained that they had gained access to another room, which had produced illegal narcotics, and as a result, the hotel staff had asked that the occupants of the second room leave. Trooper Hartzig also explained that Mr. Lloyd had consented to a search of the second room. (Doc. 120 at 18). The Appellant let the officers into the room. Once the officers were in the room, they observed a bag of clothes to their right, a garbage can with several items coming out of it, and other miscellaneous things around the room. The Appellant identified that the only property within the room that belonged to her was the white bag that contained several items of clothing. (Doc. 120 at 19). Trooper Hartzig and Trooper Rios separated the Appellant and Mr. Patterson, and continued to ask them questions. Trooper Hartzig testified that Mr. Patterson acknowledged that they would find narcotics inside the room because there was a marijuana blunt inside the ashtray in the nightstand. Thereafter, Trooper Hartzig located the marijuana blunt. (Doc. 120 at 21). Next to the blunt there were two sets of keys: one went to a Toyota and one went to a Dodge. The Appellant acknowledged that the keys went to vehicles that were not on the property. However, Trooper Hartzig then proceeded to push the unlock/lock buttons on the keys and a noise was heard coming from outside. Trooper Hartzig then walked closer to the door and hit the button again, at which point, he was able to see that the key was actually unalarming a vehicle just below the room. At that point, the Appellant stated that they had driven the vehicle there but did not want to tell law enforcement because neither of them had a valid driver's license. (Doc. 120 at 22). Trooper Hartzig asked the Appellant for her consent to search the vehicle, but the Appellant denied consent and explained that it was not her vehicle and she couldn't consent to a search of it. At that point, Trooper Rios used his K-9 to walk around the vehicle and received an alert on the vehicle. Trooper Hartzig testified that he then threw down the keys, Trooper Rios used them to pop open the trunk, and then received a request from Trooper Rios to arrest the subjects. As the Appellant and Mr. Patterson were detained, the search of the vehicle and contents continued. (Doc. 120 at 23). As a result of that search, a loaded firearm was located inside a backpack in the trunk, along with some U.S. currency, marijuana and methamphetamine. (Doc. 120 at 24). On cross-examination, Trooper Hartzig testified that Mr. Lloyd did not have a key to the second room he rented, nor did he know who was staying in the room. (Doc. 120 at 25). Further, at the time that Mr. Lloyd consented to the search of the room, there was no evidence of any illegal activity going on in that room. (Doc. 120 at 26, 27). Trooper Hartzig further testified that at the time he went to the second room and came in contact with the Appellant, he advised her that management had refunded the money for the room and was asking for everyone to leave the hotel due to

the criminal activity that had taken place. (Doc. 120 at 30). Trooper Hartzig acknowledged that the Appellant invited the two officers into the hotel room thereafter. (Doc. 120 at 32). However, Trooper Hartzig and Trooper Rios were wearing a uniform that most people would recognize to be a law enforcement uniform and also had a thigh holster containing a weapon that extended from his belt down to his thigh. (Doc. 120 at 33). Trooper Hartzig testified that he separated the Appellant and Mr. Patterson upon entering the room not because they had provided them with any information that illegal activity was going on, but instead, because their body language led him to believe they were worried about something. (Doc. 120 at 35). Trooper Hartzig testified that at any point the Appellant and Mr. Patterson could have said they wanted to leave. (Doc. 120 at 37). A search warrant was never obtained for any search involving the Appellant and Mr. Patterson. (Doc. 120 at 38). After separating the individuals, Trooper Hartzig picked up the car keys off the nightstand and had them physically in his possession for a period of time. (Doc. 120 at 41). At the point that he picked up the car keys, he had no evidence of any criminal activity on the part of the Appellant. (Doc. 120 at 42). Trooper Hartzig testified that it was never his intention to sweep the parking lot and search every car with the K-9. Prior to searching the car, Trooper Hartzig never tried to determine who the registered owner of the vehicle was. (Doc. 120 at 49). Mr. Hartiz next testified that he never told the Appellant or Mr. Patterson that they were free to leave. (Doc. 120 at 53). Florida Highway Patrol Trooper Luis Rios was the next witness called to testify for the United States during the motion to suppress hearing. Trooper Rios testified that he was called to a Days Inn location in Brooksville, Florida on October 8, 2013 to assist his partner, Trooper Hartzig, with a call. (Doc. 120 at 66). Trooper Rios testified that there were two rooms involved in the searches that he participated in. During the search of the first room, a lady from housekeeping that was standing at the front door passing by told him that the person who rented the first room had also rented a second room. A manager confirmed that a second room had been rented. (Doc. 120 at 67). The manager advised Trooper Rios that she wanted the individuals within the second room removed and she had refunded the money to the original person who rented the room. Trooper Rios assisted management and walked to the second room where he came into contact with the Appellant and Mr. Patterson. (Doc. 120 at 68). Both troopers advised the Appellant that they had permission from Mr. Lloyd to search the room and the Appellant allowed them to come into the rom. Mr. Patterson did not say anything when the troopers entered the room. (Doc. 120 at 71). Trooper Rios testified that the Appellant and Mr. Patterson were acting normal upon their entry into the room. (Doc. 120 at 72). The only reason that the Appellant and Mr. Patterson were separated and questioned was because that was a normal procedure in these types of circumstances. (Doc. 120 at 72). Trooper Rios acknowledged that the Appellant and Mr. Patterson were not told that they could leave the room at any time. (Doc. 120 at 73). Ultimately, after the two had been separated and interrogated, they were brought back into the room where the discussion shifted to the keys that were found on the nightstand. The Appellant told Trooper Hartzig that the keys were to their personal vehicles, but the vehicles were not on the property. (Doc. 120 at 73). When Trooper Hartzig began to push the buttons on the keys, an alarm went off outside and identified a Toyota Avalon. (Doc. 120 at 74). Trooper Hartzig then asked the Appellant if he could search the vehicle and the Appellant did not give her consent. (Doc. 120 at 75). Thereafter, Trooper Rios' K-9 partner, Ciro, inspected the Toyota Avalon by sniffing the outside of it. (Doc. 120 at 76). Ciro's sniff resulted in a positive alert to the left rear of the vehicle and he then gave a final response by sitting down on the asphalt. After Trooper Hartzig threw down the keys to Trooper Rios, the trunk was opened and the only thing sitting inside the trunk was a backpack. The backpack was then unzipped, and inside was a rice box that had crystal meth inside, along with a handgun and some marijuana. (Doc. 120 at 76). The Appellant and Mr. Patterson were detained and DEA was called to the scene. (Doc. 120 at 77). On cross-examination, Trooper Rios testified that the Appellant never denied ownership of the keys. (Doc. 120 at 84). However, the Appellant never gave consent to a search of the vehicle. Trooper Rios further testified that they had no information that the vehicle contained any contraband. (Doc. 120 at 85). Trooper Rios testified that had Trooper Hartzig not pushed the button to alert to the Avalon, he would not have searched the parking lot. (Doc. 120 at 86). They had not intended on doing a general sweep of the entire parking lot with K-9 Ciro. (Doc. 120 at 87). Drug Enforcement Administration

Officer Daniel McCaffrey was the next witness called to testify for the United States. Officer McCaffrey testified that he came into contact with the Appellant at the Hernando County Jail. (Doc. 120 at 90). During their discussion, the Appellant advised Officer McCaffrey that although approximately 12 ounces of methamphetamine was found, only four ounces belonged to her. Furthermore, the firearm that was found inside the bag did not belong to her but instead, belonged to Mr. Patterson. (Doc. 120 at 92). Thereafter, Vinnie Sookhoo was the first witness called to testify for the Defense. (Doc. 120 at 95). Mr. Sookhoo testified that he was the general manager of the Days Inn in Brooksville, Florida on October 8, 2013. (Doc. 120 at 96). On that date, Mr. Sookhoo testified that he remembered coming into contact with two Florida State Troopers. He was asked by the troopers who was renting rooms 258 and 224. (Doc. 120 at 96). Mr. Sookhoo identified that his front desk manager was an individual named Ms. Diaz. (Doc. 120 at 99). Mr. Sookhoo testified that he accompanied two officers up to Room 258. He advised the officers that if there was any illegal activity going on in one of the rooms, he would have to kick out the guests and they would be evicted. (Doc. 120 at 99). Mr. Sookhoo testified that the only way he would have given the officers consent to search a room was if they suspected illegal activity in that room. (Doc. 120 at 103). Upon arriving at the room 258 door, Mr. Sookhoo put his key in the door, granted the officers access to the room, and then he left. Mr. Sookhoo could not remember whether they knocked on the door or just used the key to enter. (Doc. 120 at 108). On cross-examination, Mr. Sookhoo testified that he was certain the room he gave the officers access to was 258 because 258 was right behind his office and he clearly recalled walking up there with Marilyn and the officers to open the room. (Doc. 120 at 112). The United States then recalled Trooper Hartzig as the final witness during the motion to suppress hearing. (Doc. 120 at 119). Trooper Hartzig testified that there was one occupant in the first room, room 224, and that occupant was a female. The district court then inquired of Trooper Hartzig and he testified that he could not recall seeing the previous male witness on the night of the incident at the hotel. (Doc. 120 at 121). The Defense did not present any testimony from James Lloyd, who was the alleged third party's consent. After hearing the respective arguments from trial counsel and the United States, the district court denied the Appellant's motion to suppress by written order. (Doc. 59). The order stated that it found that "under either version of the sequence of events the outcome of the motion is the same. Despite the discrepancy about how the troopers gained access to the room or which room the troopers accessed first, there is no evidence in the record to dispute that Lloyd leased both rooms and gave consent to search both rooms. Likewise, there is no evidence in the record that either of the Defendants protested or objected to the search of the room or the presence of the officers in the room." (Doc. 59 at 4). The Court also found that "there is no doubt that Lloyd was authorized to consent to a search of Room 258. The room was rented in his name, he paid for it, and he could have entered and used the room if he so chose. Consequently, his consent to search Room 258 was valid pursuant to Matlock. The troopers were legally permitted to enter and search Room 258 unless either of the Defendants, as the co-tenants occupying the room, objected to any such search. (Doc. 59 at 8-9). Prior to trial, Mr. Lopez was asked about why he did not call Mr. Lloyd as a witness during the motion to suppress hearing. Mr. Lopez testified that he was working with Mr. Anderson (counsel for the Petitioner's co-defendant) on the motion and they did not attempt to locate Mr. Lloyd. Mr. Lopez reasoned that he did not think it was something that would work for them because they believed Mr. Lloyd was working with the government because he was not charged. However, he did not provide any basis as to why he believed this to be true. Furthermore, in the attached affidavit, it is clear that Mr. Lopez's allegations were false and now in dispute.

**(b) Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:
Claim of ineffective assistance of counsel is more appropriately raised in a collateral proceeding. *See,*
*Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐   No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____
Date of the court's decision: _____
Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion, petition, or application?
Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?
Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
Yes ☐   No ☐

(6) If your answer to Question (c)(4) is "Yes," state:
Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____
Date of the court's decision: _____
Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____
_____
_____

**GROUND THREE:** _____

(a  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____
_____
_____
_____
_____
_____
_____

(  **Direct Appeal of Ground Three:**
   (1) If you appealed from the judgment of conviction, did you raise this issue?
       Yes ☐    No ☐
   (2) If you did not raise this issue in your direct appeal, explain why:

_____

(c **Post-Conviction Proceedings:**
   (1) Did you raise this issue in any post-conviction motion, petition, or application?
       Yes ☐    No ☐
   (2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____
Name and location of the court where the motion or petition was filed: _

Docket or case number (if you know): _
Date of the court's decision: _____
Result (attach a copy of the court's opinion or order, if available): _

_____

   (3) Did you receive a hearing on your motion, petition, or application?
       Yes ☐    No ☐
   (4) Did you appeal from the denial of your motion, petition, or application?
       Yes ☐    No ☐
   (5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
       Yes ☐    No ☐
   (6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: \_\_\_\_

Docket or case number (if you know): \_\_\_\_

Date of the court's decision: \_\_\_\_

Result (attach a copy of the court's opinion or order, if available): \_\_\_\_

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:** \_\_\_\_

(a Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

**Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
   Yes ☐   No ☐

(2) If you did not raise this issue in your direct appeal, explain why:

(c **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?
   Yes ☐   No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: \_\_\_\_

Name and location of the court where the motion or petition was filed: \_\_\_\_

Docket or case number (if you know): \_\_\_\_

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _

_____

(3) Did you receive a hearing on your motion, petition, or application?
    Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?
    Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
    Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _

_____

Docket or case number (if you know): _

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____
_____
_____
_____
_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:
The grounds raised in the instant petition have not been raised prior because claims of ineffective assistance of counsel are most appropriately raised through collateral proceedings and the instant petition is the first collateral proceeding that the Petitioner has filed.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?
    Yes ☐   No ☒
    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

    (a) At the preliminary hearing:   Ray Christopher Lopez
    Law Office of Ray Christopher Lopez, 115 S Albany Avenue, Tampa, Florida 33606
    (b) At the arraignment and plea:   Ray Christopher Lopez
    Law Office of Ray Christopher Lopez, 115 S Albany Avenue, Tampa, Florida 33606
    (c) At the trial:   Ray Christopher Lopez
    Law Office of Ray Christopher Lopez, 115 S Albany Avenue, Tampa, Florida 33606
    (d) At sentencing:   Ray Christopher Lopez
    Law Office of Ray Christopher Lopez, 115 S Albany Avenue, Tampa, Florida 33606
    (e) On appeal:   Rachael Elizabeth Bushey
    511 W Bay Street, Suite 330, Tampa, Florida 33606
    (f) In any post-conviction proceeding:   Rachael Elizabeth Bushey
    511 W Bay Street, Suite 330, Tampa, Florida 33606
    (g) On appeal from any ruling against you in a post-conviction proceeding:
    N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?

    Yes ☒    No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐    No ☒

    (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

    _____

    _____

    (b) Give the date the other sentence was imposed: _____

    (c) Give the length of the other sentence: _____

    (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐    No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*
    The Petitioner was sentenced on February 3, 2015. The Petitioner then filed her Notice of Appeal with the Eleventh Circuit Court of Appeal (case number 15-11533-C). On May 24, 2016, the Eleventh Circuit issued its opinion, affirming the Petitioner's conviction. The Mandate was not issued until June 22, 2016. A federal criminal conviction becomes final, for purpose of calculating the one-year period in which defendant may move to vacate, when time expires for filing petition for certiorari contesting the appellate court's affirmation of conviction. *Clay v. United States*, 537 U.S. 522 (2003). The instant petition is timely Because it is filed within the 90 day window following the affirmance of the Petitioner's conviction.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:
   A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
   (1) the date on which the judgment of conviction became final;
   (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
   (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
   (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: <u>The Petitioner asks this Court to vacate her judgment and sentence or allow him the opportunity to accept the government's previously offered plea. In the alternative, the Petitioner requests that this Court set the matter for an evidentiary hearing,</u> or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on __6/30/17__.
(month, date, year)

Executed (signed) on __6/30/17__ (date).

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

_____
_____
_____